# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

_____
                                          )
**In re:**                                )
                                          )
**ASSOCIATED GROCERS OF MAINE, INC.,**    )   **Chapter 11**
                                          )   **Case No. 11- 11196**
        **Debtor.**                       )
_____ )

## MOTION OF UNITED STATES TRUSTEE
## TO APPOINT CHAPTER 11 TRUSTEE

The United States Trustee, pursuant to 28 U.S.C. § 586(a)(3), 11 U.S.C. §§ 105(a), 307 and 1104(a), and Fed. R. Bankr. P. 2007.1, by and through his undersigned counsel, hereby moves the Court to order the appointment of a chapter 11 trustee in the above-captioned chapter 11 case of Associated Grocers of Maine, Inc. (the "Debtor"). In support of this Motion, the United States Trustee states as follows:

### INTRODUCTION

1. Cause exists to appoint a chapter 11 trustee in this case. Currently, there is a void in the management of the Debtor. As of May 3, 2011, every member of the Debtor's Board of Directors tendered his or her resignation. After these resignations, pre-petition, in lieu of the Board of Directors, a receiver was appointed by the Superior Court of the State of Maine who was in place, managing an orderly liquidation of the assets of the Debtor. However, post-petition, in accordance with the United States Bankruptcy Code, the Receiver became a custodian – whose role is limited as such. The Receiver is not vested with the powers granted to a debtor-in-possession and has no authority to administer a chapter 11 case. Cause not only exists to appoint a chapter 11 trustee, it is in the best interests of the creditors of the Debtor's estate for the Court to order such an appointment.

## JURISDICTION

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

4. Since 1953, the Debtor was a retailers' cooperative, owned and managed by a group of store owners that served 300 independent supermarkets in Maine, New Hampshire, Vermont, and Massachusetts.

5. Prior to certain events which transpired between April and June 2011, which are discussed in greater detail below, the Debtor was managed by a Board of Directors comprised of individuals who owned and/or operated several of the small independent grocery stores to whom the Debtor distributed products (the "Board of Directors").

6. On or about April 27, 2011, the Bank of Maine, f/k/a Savings Bank of Maine ("The Bank of Maine"), one of the Debtor's secured lenders, commenced litigation against the Debtor in the Superior Court of Maine (Kennebec County), in a case captioned *Savings Bank of Maine v. Associated Grocers of Maine, Inc. et al.,* Civil Action Docket No. CV-11-92 (the "State Court Litigation").

7. In connection with the State Court Litigation, on or about April 27, 2011, the State Court ordered the appointment of a receiver (the "April 27 Receivership Order"). A true and correct copy of the April 27 Receivership Order is attached as Exhibit A.

8. Subject to the April 27 Receivership Order, James C. Ebbert of Aurora Management Partners, Inc. of Rockland, Maine, was appointed as receiver of the Debtor (the "Receiver").

9. Upon information and belief, at the time that the Receiver was appointed, the Debtor had outstanding loans with two secured lenders – The Bank of Maine and Camden National Bank ("CNB") – and the Debtor was in default under the loans.

10. Upon further information and belief, at the time the Receiver was appointed, it was no longer viable for the Debtor to conduct ongoing business operations. Indeed, the Debtor consented to the appointment of the Receiver, and further consented that the Receiver was authorized to, among other things, "manage, protect and preserve the Collateral [of The Bank of Maine], and, to the extent feasible, to wind up the business of [the Debtor] …." April 27 Receivership Order at ¶ 1(a).

11. Consequently, the Receiver commenced efforts to orderly liquidate the assets of the Debtor.

12. Upon information and belief, between April 28, 2011 and May 3, 2011, all of the members of the Board of Directors resigned from service to the Debtor.

13. On or about June 15, 2011, the State Court entered an Amended and Restated Order Appointing Receiver, which amended and restated the April 27 Receivership Order and incorporated certain terms and conditions related to the appointment of the receiver, which were agreed and consented to by The Bank of Maine; CNB; certain vendors of the Debtor, including Sure Winner Foods, Inc., Michaud Distributors, Oakhurst Dairy, Lepage Bakeries, Inc.; and Imperial Distributors, Inc. (the "Amended Receivership Order").

14. Subject to the Amended Receivership Order, the Receiver was authorized and directed to, among other things, "manage, protect and preserve" the collateral of the secured creditors in this case and wind down the business operations of the Debtor.

15. During the pendency of the State Court Litigation, certain of the members of the Debtor attempted to intervene in the State Court Litigation, by asserting, among other things, that they have claims against the Debtor arising out of certain Capital Accounts that the members contributed to during their membership, accounts which were managed by the Debtor. The members assert that the proceeds in these accounts have not been returned to them, despite due demand. The members also assert, in general terms, that, as a result of their alleged entitlement to the proceeds of these Capital Accounts, which the Debtor has not returned, they have the right to offset amounts they may owe to the Debtor for outstanding accounts receivable.

16. The accounts receivable are purportedly the collateral of The Bank of Maine.

17. Setting aside the merits of the claims and defenses of the members versus those of the secured creditor, it is apparent that, at a minimum, the interests of the members of the Debtor are in conflict with the interests of the secured creditors of the Debtor.

18. On August 26, 2011 (the "Petition Date"), the Receiver filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code for the Debtor.

**GROUNDS FOR RELIEF REQUESTED**

19. Section 1104(a) of the Code provides, in relevant part:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United

> States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>
> . . .
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause … or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; ….

11 U.S.C. § 1104(a).

20. In this case, the incontrovertible facts which gave rise to the commencement of this bankruptcy case make clear that cause exists to appoint a chapter 11 trustee.

### A. Cause Exists Pursuant to 11 U.S.C. § 1104(a)(1) to Appoint a Trustee.

21. Cause exists to appoint a chapter 11 trustee in this case because the current "management" of the Debtor lacks the legal authority to manage the operations of the Debtor (be it to implement a liquidation or otherwise) in chapter 11 and because the interests of the Debtor's members/customers are in conflict with those of the secured creditors of the Debtor.

#### i. *The Current Management of the Debtor*.

22. Cause exists to appoint a chapter 11 trustee because, as it stands, there is no one with the legal authority to manage the Debtor's post-petition operations.

23. Right now, the Debtor is a debtor-in-possession, notwithstanding the fact that the property of the Debtor and/or the estate is in the possession of the Receiver, because no trustee has yet been appointed. *In re 400 Madison Ave. L.P.,* 213 B.R. 888,

894 (Bankr. S.D.N.Y. 1997).

24. A debtor-in-possession is responsible for managing the Debtor's estate in the best interests of the creditors. However, here, the Receiver, who is, *de facto,* the debtor-in-possession, is not empowered under the Code to exercise those powers and duties. 11 U.S.C. § 105(b)("A court may not appoint a receiver under … title [11]"); *see also In re Casco Bay Lines, Inc.,* 17 B.R. 946, 952 (BAP 1st Cir. 1982).

25. In other words, we are left with a chapter 11 debtor who is effectively hamstrung by the Code in its ability to move forward with the administration of its case.

26. Upon the filing of this case, the Receiver became a custodian – whose role is limited as such. 11 U.S.C. § 101(11)(a-b) ("A receiver or trustee of any of the property of the debtor, appointed in a case … not under this title" is a "custodian.") As a custodian, the Receiver cannot "take any action in the administration of [] property of the debtor … or property of the estate … except such action as is necessary to preserve such property." 11 U.S.C. § 543(a).

27. Further, as of the Petition Date, the Code mandates that the Receiver (who is now acting as a custodian) is required to turn over "any property of the debtor held by or transferred to such custodian" to the debtor-in-possession or a trustee. 11 U.S.C. § 543(b)(1).[1]

28. In an instance like this, where there are or may be assets to be administered, yet there is no one with the legal authority to manage the operations of a

---

[1] The Code does provide that the Court can continue the Receiver's prepetition appointment. 11 U.S.C. § 543(d)(1). However, "nowhere in the Code is there even a hint that a 'continued' receiver is subject to some or all of the duties imposed on a Chapter 11 trustee by Code § 1106." *In re 400 Madison Ave. L.P.,* 213 B.R. at 894. Indeed, "[t]he duties of a receiver retained in possession under Code § 543(d) are limited to the preservation and care of the property under his control." *Id.*

debtor in bankruptcy, the case must be administered by a trustee who has the clear legal authority to act.[2] *In re Casco Bay Lines, Inc.,* 17 B.R. at 952 (affirming Bankruptcy Court's appointment of a chapter 11 trustee where: (1) the debtor's officers and directors were barred by order of the court from participating in debtor's management; (2) the debtor was being operated by a person or persons installed as manager(s) by the court; and (3) there had been no authorization for the appointment of a trustee.)

29.     In the present case, the Receiver was appointed in accordance with the common law of the State of Maine.  According to Maine common law, the Receiver is an officer of the Court and, as such, does not represent any one party.  *Glidden v. Rines,* 128 A. 4, 6 (Me. 1925).[3]

30.     Upon the commencement of the Debtor's chapter 11 case, the Receiver's corporate management powers as set forth in the Amended Receivership Order ceased.

31.     The need to establish control of the Debtor, post-petition, which has been left without management as a consequence of the commencement of its chapter 11 case, is sufficient cause to appoint a chapter 11 trustee in this case. H.R. Rep. No. 95-595, 95th

---

[2] A chapter 11 trustee, subject to the supervision of the Court, can manage the Debtor's financial affairs in satisfaction of the fiduciary duties owed to creditors by the debtor-in-possession and the other estate fiduciaries.  See, generally, *Wolf v. Weinstein,* 372 U.S. 633, 83 S. Ct. 969 (1963); *Stubbe v. Estrada (In re San Juan Hotel)*, 71 B.R. 413 (D. P.R. 1987); *Mosser v. Darrow,* 341 U.S. 267 (1951); *In re Cochise College Park, Inc.,* 703 F. 2d. 1339 (9th Cir, 1983); *In re Schwen's Inc.*, 20 B.R. 638 (Bankr. D. Minn. 1982).

[3] Significantly, this is *not* a case where an individual has been appointed by the Court to act as a receiver and the individual has been appointed to act as a corporate manager.  *See e.g., In Adams v. Marwil (In re Bayou Group, L.L.C.),* 564 F.3d 541, 548 (2d. Cir. 2009).  In *In re Bayou Group, L.L.C.,* the Second Circuit upheld the Southern District of New York's denial of a Motion to Appoint a Chapter 11 Trustee in a circumstance where a prepetition receiver had been appointed by the Southern District of New York, and the receiver had been specifically designated to serve as the Debtor's corporate manager.  The Second Circuit noted that, "[w]hile [the receiver/manager's] "custodian" hat came off upon the commencement of the Chapter 11 proceedings, his "managing member" hat remained." *Id.*  Indeed, in the affirmed opinion of the Southern District, the Court noted that "[h]ad I appointed [the receiver] solely pursuant to [the federal] receivership statutes, then the U.S. Trustee would be correct that his corporate management powers ceased the moment he caused Bayou to file for bankruptcy. *See* 11 U.S.C. § 543." *In Adams v. Marwil (In re Bayou Group, L.L.C.),* 363 B.R. 674, 684 (S.D.N.Y. 2007).

Cong., 1st Sess. 402 (1977) ("Where there is a vacuum in place of management, whether self-induced or not, appointment of a trustee under 11 U.S.C. § 1104(a) is warranted."); *see also In re William A. Smith Const. Co.*, 77 B.R. 124, 127 (Bankr. N.D. Ohio 1987) ("Generally, a debtor corporation without a duly constituted president and/or chief executive/operating officer is without effective managerial control and lacks the capability of preserving the estate's assets for the benefit of its creditors."); *In re Bible Speaks*, 74 B.R. 511, 514 (Bankr. D. Mass. 1987) (lack of corporate leadership is sufficient grounds for appointment of a trustee); *In re Casco Bay Lines, Inc.,* 17 B.R. at 951 ("either the debtor must be in control, or the court will authorize the appointment of a trustee to take control of the debtor's affairs.")

  **ii.** *The Conflict Between the Members/Customers and the Secured Creditors*.

32. Prior to the appointment of the Receiver, the Debtor, a member-owned cooperative, was managed by its customers.

33. Upon information and belief, part of the Debtor's prepetition business model was that the Debtor's customers (presumably, including the managers) could purchase products from the Debtor for which they received a half-percent dividend deposited into a "Capital Account."

34. According to an Emergency Motion to Intervene with Incorporated Memorandum of Law filed by "AGME Customers" in the State Court Litigation (a true and correct copy of which is attached as Exhibit B, and of which the Court can take judicial notice[4]), "[the Debtor's] Customers, upon becoming customers with [the Debtor], were required to deposit a certain amount of money into a Capital Account." Emergency Motion at ¶ 9.

---

[4] *In re Hyde,* 334 B.R. 506, 508-09, fn. 2 (Bankr. D. Mass. 2005).

35. The AGME Customers allege that they were encouraged by "representatives of [the Debtor] … to deposit an overage into their Capital Accounts because said accounts were high-interest yielding savings accounts." *Id.* at ¶¶ 12, 13.

36. The Emergency Motion further alleges that, pursuant to the Debtor's Bylaws and certain of the Debtor's Annual Reports, if the AGME Customers ceased to be eligible members of the Debtor, they could demand the balance of their Capital Accounts and the Debtor would deduct any outstanding accounts receivable owed by the former customer, and forward the balance to the customer. *Id.,* at ¶ 14.

37. On April 27, 2011, the Receiver was appointed to wind down the operations of the business.

38. By letter dated May 2, 2011, the Receiver notified the AGME Customers that "the Capital Accounts were not kept segregated … and, consequently, the money was no longer available for demand." *Id.* at ¶ 26.

39. Certain, if not all, of the AGME Customers, may have claims against the Debtor relating to recovering the balance of their respective Capital Accounts. *See id.,* at ¶ 25. Presumably, this includes the members of the Board of Directors, who are each a member/customer of the Debtor.

40. According to Schedule B of the Debtor's Petition, the significant asset remaining in the Debtor's estate is the accounts receivable (the "Accounts Receivable"). The Accounts Receivable are alleged to be owed by the AGME Customers to the Debtor. Further, the Accounts Receivable, purportedly, are the collateral of The Bank of Maine.

41. There is also apparently a dispute between the Debtor and the AGME Customers relating to whether the customers have a right to offset their outstanding

Accounts Receivable against what the Debtor was supposed to be holding in the Capital Account. *See id.,* ¶27.

42. In a case such as this where there is a conflict between a cooperative's member-customers and the interest of its creditors, and the conflict is beyond the "inherent conflicts under which all healthy cooperatives operate" the appointment of a trustee chapter 11 is warranted. *See Cajun Elec. Power Coop. v. Central Louisiana Elec. Coop., Inc. (In re Cajun Elec. Power Coop., Inc.),* 74 F.3d 599, 600 (5th Cir. 1996).

### B. Best Interests of the Creditors.

43. For the reasons set forth above, a trustee must be appointed because it is in the best interests of the creditors.

44. "In determining whether a trustee should be appointed under section 1104(a)(2), 'in the interests of creditors,' courts 'look to the practical realities and necessities … the standard is a flexible one.'" *In re Euro-American Lodging Corp.,* 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007) (citations omitted).

45. Among the factors considered are (i) the trustworthiness of the debtor; (ii) the debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence – or lack thereof– of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment." *Tradex Corp. v. Morse,* 339 B.R. 823, 829 (D. Mass. 2006) (citation omitted).

46. Based on the information available to the United States Trustee at this early stage of this case, what is evident is that there are a number of significant legal

issues related to the assets of this estate and the creditors' positions relative to these assets that must be evaluated by either a debtor-in-possession or a trustee.

47. However, as detailed above, the Code renders moot the debtor-in-possession's ability to undertake the task of administering the estate. Consequently, procedurally, in order for this case to proceed, a chapter 11 trustee must be appointed.

48. It is in the creditors' best interests to have a qualified, disinterested individual appointed to complete this task.

49. Upon information and belief, since the Receiver would be paid for his services if he were permitted to continue to act as the manager of the debtor-in-possession, there is no additional harm to the estate from a financial standpoint if a chapter 11 trustee is appointed. In other words, the estate will bear the cost either way due to the resignation of the Board of Directors and the appointment of a receiver.

## **CONCLUSION**

WHEREFORE, the United States Trustee prays that the Court enter an order directing him to appoint a Chapter 11 Trustee in this case, prescribe such limitations or conditions to the trustee's powers as may be appropriate, and grant such other relief to which the parties may be entitled.

Dated in Portland Maine this 26th day of August, 2011.

Respectfully submitted,

WILLIAM K. HARRINGTON
United States Trustee

 /s/  Stephen G. Morrell, Esq.
Stephen G. Morrell, Esq.
Jennifer H. Pincus, Esq.
United States Department of Justice
Office of United States Trustee
537 Congress Street, Suite 303
Portland, ME 04101
(207) 780-3564
Stephen.G.Morrell@usdoj.gov
Jennifer.H.Pincus@usdoj.gov