STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV11-92

SAVINGS BANK OF MAINE,
    Plaintiff,

v.

ASSOCIATED GROCERS OF MAINE, INC.,
    Defendant,

and

CAMDEN NATIONAL BANK,
    Party in Interest.

CONSENTED-TO

ORDER APPOINTING RECEIVER

Received Kennebec SS.
04/29/2011  8:17AM
# Pages 17 Attest:
BEVERLY BUSTIN-HATHEWAY
REGISTER OF DEEDS

By agreement of Plaintiff and Defendant Associated Grocers of Maine, Inc. ("AGME"), and on the motion of Plaintiff Savings Bank of Maine ("SBM") for appointment of a receiver (the "Motion"), it is hereby **ORDERED** that James C. Ebbert of Aurora Management Partners, Inc., Rockland, Maine, is hereby appointed as Receiver *pendente lite* (the "Receiver"), subject to the following terms and conditions:

1.    <u>Powers</u>. The Receiver is hereby authorized and empowered to do the following until further order of this Court:

a)    To manage, protect and preserve the Collateral (meaning all the property securing the Note)[1] and, to the extent feasible, to wind up the business of Defendant AGME, and to collect all rents, income, revenues and profits therefrom and apply the same to the payment of all expenses and other charges of such receivership including, without limitation, the compensation and expenses of the Receiver, including fees and expenses of Receiver's counsel, and to the

---

[1] All capitalized terms not expressly defined herein shall have the meanings ascribed to them by the Complaint and the Motion.

1

payment of the secured obligations of SBM, and to conduct an orderly shutdown of business operations until a sale or other disposition of such Collateral shall be finally made and consummated during the pendency of this action;

b) To examine and, as necessary, make copies of the records and accounts of AGME relating to the management of AGME's business and the Collateral, and report to the Court on the same during the pendency of this action;

c) To apply the revenues and profits received from the wind-up of the business, including, without limitation, the collection of accounts, in the following manner:

    i. Payment of the ordinary and necessary expenses of preserving the Collateral and the assets of AGME including, without limitation, the payment of taxes, materials, supplies, utilities, payroll, insurance premiums and other necessary expenses;

    ii. Payment of the costs, expenses and fees of the Receiver and attorneys for and agents of the Receiver; and

    iii. Payment of principal and interest and other sums owing to SBM on its Note;

d) To collect the revenues, profits, accounts receivable and all other obligations owing to AGME, to bring legal action, if necessary, in order to collect the same, and, on notice to SBM, to settle and compromise any of such accounts receivable, debts or obligations whenever the Receiver shall deem it advisable to do so, upon such terms and conditions as appear to it to be justifiable;

e) To negotiate and enter into contracts, to renegotiate and terminate contracts, to sell goods, hire and fire employees and do all things AGME could or would do in the course of winding up the business and, on notice to SBM, to compromise obligations owing to and by

AGME where it appears in the Receiver's best judgment to be in the best interest of preserving the Collateral and/or the assets entrusted to the Receiver;

f) To enter into contracts, incur and discharge obligations, and make expenditures from the available income and receipts of the business for labor, insurance, equipment, inventory and supplies currently required, and to pay expenses of all types related to the winding-up of the business of AGME;

g) To open one or more depository accounts, using AGME's tax identification number, at any federally insured depository institution, to withdraw funds from any other financial institution in which AGME may have deposited funds, and to deposit such funds in such accounts;

h) To exercise such rights as AGME may have under any permits or licenses held by AGME;

i) To pay the agents, attorneys and employees whom the Receiver hires or continues in employment such compensation for their services as the Receiver deems to be proper;

j) To pay all appropriate real estate taxes, personal property taxes, and any other taxes or assessments against the Collateral;

k) To expend reasonable sums in the preservation of and/or repair and maintenance of the Collateral in the possession of the Receiver which, in the best judgment of the Receiver, is necessary to preserve and maintain such property pending the outcome of this litigation and/or foreclosure of SBM's Mortgage, Security Agreement, Collateral, and/or security interests;

l)   To borrow funds for purposes relating to the operations of the Receivership. The Receiver shall not borrow funds without first providing SBM, by advance written notice, a reasonable opportunity to advance funds required by the Receiver;

m)   To cooperate with SBM in the foreclosure of SBM's Collateral, real, personal and intangible, and to assist SBM in the liquidation of those assets;

n)   To require AGME and its principals to comply promptly and fully with the terms of this Order and to cooperate with the efforts of the Receiver, upon its reasonable request, to accomplish the orderly transition to the Receiver of the possession, control, preservation and management of AGME's property;

o)   To investigate transfers made by AGME, including, without limitation, transfers to insiders, and concealment of any property;

p)   To investigate the validity of any claims made against AGME;

q)   To contest, protest, or appeal any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Collateral; and

r)   To do anything the Receiver reasonably deems necessary to perform the duties set forth above.

The Receiver shall have broad discretion to exercise its powers as it deems proper in its business judgment. The common law business judgment rule shall apply to all decisions made by the Receiver. The fact that the Receiver has the power to perform an act does not require the Receiver to perform that act if it is contrary to the Receiver's business judgment.

2.   <u>Compensation of Receiver.</u>

a) <u>Hourly Rate.</u> The Receiver will be paid the sum of $320.00 per hour for all Work (as set forth in detail in the "Receiver Agreement" attached to the Affidavit of Alvin S. Butler submitted in support of SBM's Motion for Appointment of a Receiver) performed by James C. Ebbert.

b) <u>Expenses</u>. The Receiver will be reimbursed for all reasonable out-of-pocket expenses.

3. <u>Termination of Receivership</u>

a) <u>Termination on Dismissal</u>. If the parties stipulate to the dismissal of this civil action, or if this civil action is otherwise dismissed, then the Court will retain limited jurisdiction to allow the Court to approve the Receiver's Report (as defined below).

4. <u>Final Accounting</u>

a) Within 60 business days after termination of the Receivership or the Receiver for any reason other than the bankruptcy of AGME (hereafter "<u>Termination</u>"), Receiver shall deliver to the Court a report and accounting (the "<u>Receiver's Report</u>") detailing its activities and accounting for money received, money expended, the Receiver's fees and the Receiver's expenses.

b) When the Receiver is finally discharged, all actions it has taken will be automatically ratified by the Court unless a party proves prior to the discharge of the Receiver that those actions violated the business-judgment rule.

9. <u>Independent Contractor</u>. The Receiver is an independent contractor and shall not be deemed an employee of SBM or AGME. The Receiver shall operate under an Agreement substantially in the form attached hereto as **Exhibit A.**

DATED: 4/27, 2011   _____
                    Justice, Kennebec County Superior Court

A true copy
ATTEST:

_Michele Lumbert_
Michele Lumbert
Clerk of Courts

(SEAL)

# EXHIBIT A TO CONSENTED-TO ORDER APPOINTING RECEIVER

## RECEIVERSHIP AGREEMENT

This AGREEMENT by and between SAVINGS BANK OF MAINE, a federally chartered bank (hereafter, the "Bank"), and AURORA MANAGEMENT PARTNERS, INC., a Georgia corporation with offices in Rockland, Maine (hereafter, the "Receiver").

WHEREAS the Bank obtained an order dated            , 2011, issued by the Kennebec County Superior Court (the "Court"), Docket No. KENSC-20110 (the "Order"), for the appointment of Receiver for Associated Grocers of Maine, Inc. ("AGME"), and the assets thereof, subject to security interests in favor of Bank; and

WHEREAS, it is the Bank's desire to the have the Receiver manage the business and affairs of AGME, including the collection, disbursement and management of all cash for a limited period of time to preserve the value of its collateral and the assets of AGME; and

WHEREAS, the Receiver is and at all times will be an officer of the Court acting on the Court's behalf; and

WHEREAS, the Order enumerated certain powers and authorities of the Receiver, and authorized the Bank and the Receiver to enter into a contract consistent with the terms of said Order; and

WHEREAS, this Agreement is intended to be the agreement authorized by the Court in implementation of the Order:

NOW THERFORE, intending to be legally bound, the Parties hereto agree as follows:

## ARTICLE 1. THE SCOPE OF SERVICES

1.1     Scope of the Receiver's Services. The services to be provided by the Receiver are as set forth in the Order. The Receiver will take custody and control of all assets owned by AGME (the "Property") and shall operate the business of AGME in accordance with the terms of the Order and this Agreement.

## ARTICLE 2. COMMENCEMENT DATE

2.1     Commencement Date. The Receiver's duties and responsibilities under this Agreement shall begin on <u>April 27, 2011</u>, and shall continue until termination as provided in Article 7 of this Agreement or further order of the Court; provided, however, that the rights of the Receiver and obligations of the Bank under Article 9 and

7

the funding obligations of the Bank as set forth herein shall survive any termination or other expiration of this Agreement. Bank is responsible for the Court's appointment of Receiver in accordance with the terms of this Agreement, provided that this Agreement shall govern the rights, duties and obligations of the parties hereto in connection with the receivership.

### ARTICLE 3. RECEIVER'S RESPONSIBILITIES

3.1 <u>Management Authority and Powers</u>.

a. The Receiver shall have all of the powers and authorities set forth in the Order, including, without limitation, the power to retain counsel as Receiver deems appropriate and, subject to the terms of Section 3.8 hereof and the Order, to operate the Property as a going concern or to liquidate and sell the Property upon a determination by the Receiver that there are insufficient funds available to continue the operations of AGME without deteriorating the value of the Bank's collateral. Receiver also shall have the right at any time to petition the Court for clarification of its powers and authorities if Receiver believes the terms hereof and the Order conflict or in the event Receiver is uncertain as to its powers, duties or obligations.

b. Subject to and upon the terms and conditions of this Agreement, the Receiver shall manage, operate, preserve and maintain the Property in a reasonable and prudent manner for the benefit of all parties with an interest in the Property. The Receiver shall submit to the Bank, as soon as practical but no later than May ___, 2011, an Operating Budget setting forth the anticipated costs and expenses of the Receiver. Each Operating Budget shall be prepared on a bi-weekly basis and shall indicate to the best of Receiver's ability the projected cash receipts and cash expenditures for the period covered by the Operating Agreement. The Bank shall review and, if appropriate, approve the Operating Budget.

3.2 <u>Staffing</u>. The Receiver shall have in its employ, or may retain as independent contractors, a sufficient number of capable persons to enable the Receiver to fulfill its duties as a receiver pursuant to the Order and this Agreement. All matters pertaining to the employment, supervision, compensation, promotion and discharge of such employees and contractors are the responsibility of the Receiver, which is in all respects the employer or contractor, as the case may be, of such persons; provided, however, that the Bank shall not be liable or responsible for any payment to any employee or contractor unless it shall have approved such payment pursuant to an approved Operating Budget or such payment is necessary and appropriate for the Receiver to perform his duties under the Order and/or this Agreement; provided further, however, that the Receiver shall notify the Bank in advance immediately upon discovery in the event he anticipates or expects to incur costs or expenses in excess of budgeted amounts or outside budgeted categories as set forth in the Operating Budget.

In the discharge of its responsibilities hereunder, Receiver shall exercise best efforts fully to comply with all applicable laws and regulations having to do with

8

worker's compensation, social security, unemployment insurance, hours of labor, wages, working conditions, and other employer-employee related subjects. Receiver represents that it is and will continue to be an equal opportunity employer and must advertise as such.

It is anticipated that James C. Ebbert, Director, of Aurora Management Partners, Inc. ("Aurora") will be primarily responsible to effectuate the duties of the Receiver.

3.3     Employees. Receiver shall hire, compensate, discharge, supervise and direct all persons necessary to perform the, obligations of Receiver for the Property pursuant to this Agreement and the Order. Such persons shall be the employees and/or contractors of Receiver, and not of Bank; provided, however, that current employees of AGME and employees hired by AGME during the term of the Receivership shall be AGME employees and not employees of the Receiver.

3.4     Compliance with Law, etc. Receiver shall endeavor to comply with federal, state and municipal laws, regulations and orders relative to the use, operation, and maintenance of the Property, provided that its obligation to cure any presently existing violations of such requirements shall be limited to available economic resources. Receiver shall promptly report to Bank any violation of any such law, rule, regulation or order which comes to its attention. Receiver shall not be required to make any payment out of personal resources or incur personal liability on account thereof.

3.5     Approved Operating Budgets. Receiver shall prepare and submit to Bank proposed Operating Budgets as aforesaid, with the initial budget being for the bi-weekly period ending May 13, 2011, and with subsequent Operating Budgets being for two week periods of the receivership. Operating Budgets shall be delivered to Bank not later than five (5) days prior to the commencement of the applicable period, with the exception of the initial Operating Budget to be submitted as soon as practical.

Bank will consider the proposed budget and will approve or disapprove the proposed budget within three (3) business days of its submission by the Receiver. If Bank fails to notify the Receiver of its disapproval of the budget within that time period, then the budget shall be deemed approved. An approved budget for any bi-weekly period shall be referred to as an "Approved Budget." Pending notification by the Bank of its approval or disapproval of any proposed budget, the Receiver shall be authorized to incur expenses and obligations in accordance with such proposed· Operating Budget.

Either party may propose prospectively to modify or amend an approved Operating Budget at any time, provided that no such amendment or modification shall withdraw or reduce funding for any item previously approved for which the Receiver has incurred liability or otherwise committed itself. No modification or amendment shall become effective until it has been discussed by the parties hereto and approved by them in writing.

9

Without limiting any other obligations of the Bank hereunder, Bank agrees that it shall allow the Receiver to use the Bank's cash collateral to enable the Receiver to discharge his duties in accordance with each Approved Budget and to pay expenses incurred by the Receiver in defending any claims made against the Receiver by any person or entity, including to pay the Receiver for its time spent in preparing any defenses to such claims and to pay the Receiver's attorneys' fees and expenses in connection with the foregoing. Except as otherwise provided herein, nothing contained herein shall impose upon the Bank any obligation whatsoever to make additional advances, but the Bank, in its sole and exclusive discretion, may elect to do so; provided, however, that the Bank agrees that it will make a protective advance to pay the Receiver's fees (including the Receiver's time spent and expenses incurred, plus the fees and expense of Receiver's independent counsel) if the Receiver does not have sufficient funds from the operation of the Property and such amount shall be added to the amounts due to the Bank by AGME.

Receiver agrees to use diligence and to employ all reasonable efforts to ensure that the actual costs of maintaining and operating the Property shall generally conform to the Approved Budget, but the Receiver shall not be deemed to guaranty conformance with the Approved Budget. Receiver shall notify the Bank as soon as reasonably practical of any instance in which actual costs are expected to exceed budgeted amounts.

The Bank agrees that the Receiver shall be paid its usual and customary rate, plus costs and expenses incurred for all services rendered herewith, including for all time spent defending or prosecuting claims or defenses by or against third parties. Mr. Ebbert, the primarily responsible person, shall be paid at a rate of $320 per hour. All other principals and employees of Aurora Management Partners, Inc. shall be paid their customary rates as approved by the Bank, but will be utilized only on "as needed" basis.

3.6     Deposit Account. Receiver shall promptly establish a separate non-interest bearing demand deposit bank account for the Receiver at the Bank in the name of the Receiver using the federal employer identification number of AGME as provided by the Bank (the "Receiver's Account"). Funds deposited in the Receiver's Account shall not be commingled with any other funds of the Receiver. The Receiver shall have no obligation to personally advance funds. Receiver shall have no responsibility for managing or investing any funds in the Receiver's Account other than maintaining custody and security thereof, absent a separate written agreement between the Bank and the Receiver covering fund management and investment.

3.7 Collection of Income and Deposits. The Receiver shall use diligent efforts, to the extent that the Receiver has sufficient funds, to collect all income, receivables, rents and other amounts which may become due at any time in connection with the Property.

3.8 Repairs. In cases of emergency, the Receiver may make expenditures for maintenance or repairs without prior written approval if it is necessary to protect persons

from injury or to prevent imminent damage to the Property. Bank must be informed of any such expenditure as soon as reasonably practical.

3.9     Taxes. The Receiver shall obtain and pay bills for real estate and personal taxes, and other like charges which are or may become liens against the Property to the extent that the Receiver has sufficient funds. Receiver shall obtain, verify, pay and deliver such bills in time to avoid penalty for late payment or to take advantage of discounts to the extent that the Receiver has sufficient funds. The Bank agrees to advance sufficient funds to pay said obligations.

3.10    Services. Receiver shall not be responsible for preparation of income tax returns for AGME or the Bank. Bank acknowledges that any state or federal income taxes due with respect to the income generated by the receivership, or due on account with respect to the income of the Receiver in his capacity as Receiver under the Order, shall be deemed approved expenses. The Receiver is authorized to employ a payroll service for the administration and payment of all payroll and payroll taxes.

## ARTICLE 4 EXPENDITURES

4.1     Processing and Payment of Invoices. Receiver or his designee shall receive, review and approve all invoices for expenses incurred in managing and maintaining the Property, and shall insure timely payment of those expenses to the extent that the Receiver has sufficient funds.

4.2     Cessation of Operations. If at any time the Receiver determines that there are not sufficient funds available to continue operations of AGME without permanently deteriorating the value of the Bank's collateral, then Receiver shall immediately, but upon not less than 24 hours notice to the Bank and counsel to AGME, Benjamin Marcus, Esq., without the necessity of providing any further notice, cease operating AGME. Thereafter, the Receiver shall liquidate all of the assets of AGME in a commercially reasonable manner, absent an order of the Court to the contrary. The proceeds of any such liquidation shall be distributed in accordance with the order of priority established by the Uniform Commercial Code as in effect in the State of Maine as of the date hereof.

## ARTICLE 5. EXPENSES

5.1     Receiver's Costs to be Reimbursed. The Bank shall reimburse the Receiver for any and all expenses and costs incurred by or on behalf of Receiver in accordance with the terms hereof, including any and all costs and expenses arising under any Approved Operating Budget and all of the Receiver's fees, expenses and costs incurred pursuant to this Agreement, to the extent that the Receiver does not otherwise have sufficient funds. The fees and expenses of the Receiver shall be reimbursed on a weekly basis. The Receiver is authorized to employ and pay a retainer to attorneys of his choice if, in the judgment of the Receiver, legal advice, counsel, or consultation is required in connection with the performance of the duties of the Receiver hereunder or under the Order, and to

11

prosecute actions at law or in equity as necessary or appropriate in fulfillment or determination of his duties under this Agreement or the Order or otherwise to collect any sums or obligations due the receivership.

The Bank agrees to reimburse the Receiver for fees and expenses incurred by the Receiver in connection with consultation with independent legal counsel for any and all matters as to which the Receiver retains counsel pursuant to the terms hereof. Such fees and expenses of the Receiver's independent counsel shall be reimbursed on a monthly basis, although said counsel shall be paid a retainer at the time of retention. To the extent possible, Receiver shall include those fees and expenses in its proposed Operating Budget. To the extent the income from the receivership is inadequate, the Bank shall pay such all of such costs and expenses by separate disbursement upon receipt of Receiver's request for same, and the payment of such costs and expenses shall be deemed to be an advance to protect the Property under the applicable security documents. In the event there is any dispute about the reasonableness of the fees and expenses incurred by the Receiver's counsel, then such dispute shall be resolved by the Court.

## ARTICLE 6. COOPERATION

6.1     Cooperation. Should any claims, demands, suits, or other legal proceedings be made or instituted by any person against Bank or title holder of the Property which arise out of the matters relating to this Agreement, the Receiver, to the extent not inconsistent with the rights and duties of the Receiver hereunder, under the Order, or under applicable law, including the law of attorney- client privilege as applicable to the Receiver, shall give Bank all pertinent information and reasonable assistance in the defense or other disposition thereof.

## ARTICLE 7. TERMINATION

7.1 Termination on 30-day Notice. In addition to the provisions of Sections 7.2 and 7.3, but subject to all Court orders, either party may terminate this Agreement without cause by giving the other party at least thirty (30) days notice in writing. The Court may terminate this agreement at any time upon motion, notice to the parties and hearing. Termination of this Agreement by Bank shall entitle Receiver to resign his duties under the Order.

7.2     Termination on Sale. Unless sooner terminated, this Agreement shall be terminated upon confirmation of any such sale(s) or transfer(s) of fee simple title to the all or substantially all of the Property and, and after a reasonable amount of time is allowed for the Receiver to wind up the business of the Receiver, including obtaining a final order of the Court discharging the Receiver.

7.3     Termination Without Notice. Dissolution or termination of the corporate or partnership existence of the Receiver by merger, consolidation or otherwise; or cessation on the Receiver's part to continue to do business; or bankruptcy, insolvency,

or assignment for the benefit of the creditors of the Receiver shall effect an immediate termination of this Agreement without notice.

7.4     Final Accounting. Within thirty (30) days of termination of this Agreement for any reason, Receiver shall deliver to the Court, with copies to all parties in interest, with respect to the Property: All records, contracts, leases, receipts for deposits, unpaid bills and other papers or documents which pertain to the Property. Thereafter, the Receiver shall file the Receiver's Report with the Court. To the extent any party challenges the Receiver's Report, the indemnification provisions of Article 9 will apply, and the Bank shall indemnify the Receiver for all its fees and costs incurred in connection with any Court or other proceedings, including fees of the Receiver incurred in devoting its time to such matters.

7.5     Hold Harmless. Notwithstanding the foregoing, the Bank agrees to hold harmless and indemnify the Receiver for all fees, costs and expenses incurred by the Receiver in connection with this receivership (including in defending claims of others), including for all time spent by the Receiver acting hereunder or under the Order, regardless of whether the Receivership is terminated or Bank liquidates all of its collateral or the Bank is paid in full. If the Bank sells its loan and the buyer assumes the Bank's obligations hereunder, the Bank shall be relieved of all obligations hereunder as of the date of such assumption. If the buyer does not assume the Bank's obligations hereunder, then the Bank shall remain liable under the provisions of this Section 7.5 and Article 9.

## ARTICLE 8 – NOTICES

8.1     Notices. All notices, demands, consents, and reports provided for in this Agreement shall be in writing and shall be given to the Bank or Receiver at the address set forth below or at such other address as they individually may specify thereafter in writing:

13

| | |
|---|---|
| *Receiver:* | James C. Ebbert, CTP<br>Aurora Management Partners, Inc.<br>"Camden Cottage"<br>41 Samoset Road<br>Rockland, ME 04841 |
| *With a copy to:* | Fred Bopp, Esq.<br>Perkins Thompson<br>One Canal Plaza<br>PO Box 426<br>Portland, ME 04112-0426 |
| *Bank:* | Alvin S. Butler, Senior Vice President<br>Savings Bank of Maine<br>190 Water Street<br>Gardiner, ME. 04345 |
| *With a copy to:* | Jay S. Geller, Esq.<br>Bernstein Shur<br>100 Middle Street<br>PO Box 9729<br>Portland, ME 04104-5029 |

Such notices, demands, consents and reports may be mailed by United States Registered

14

or Certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post office or a depository for the receipt of mail regularly maintained by the Post Office. Such notices, demands, consents and reports may also be delivered by hand, facsimile transmission, or by any other method or means permitted by law. For purposes of this Agreement, notices will be deemed to have been "given" upon personal delivery thereof or upon confirmation of receipt of a facsimile transmission, or 96 hours after having been deposited in the United States mail as provided above.

## ARTICLE 9. GENERAL, ETC.

9.1     No Assignment. This Agreement and all rights hereunder shall not be assignable by either party hereto.

9.2     Consent and Approvals. Bank's consent or approval may be given only by a representative of Bank from time to time designated in writing and located at the address provided in or pursuant to Section 8.1. All such consents or approvals shall also be in writing.

9.3     Amendments. Except as otherwise herein provided, any and all amendments, additions or deletions to this Agreement shall be null and void unless approved by the parties in writing.

9.4     Headings. All headings herein are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

9.5     Representations. Receiver represents and warrants that it is fully qualified to manage the property and perform all obligations assumed by Receiver hereunder. Receiver agrees to comply with all such laws now or hereafter in effect.

9.6     Indemnification by Receiver. Receiver shall indemnify, defend and hold Bank harmless from any and all claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses, including reasonable attorney's fees and court costs, sustained or incurred by or asserted against Bank by reason of or arising out of Receiver's fraud in the performance of the duties and obligations required by this Agreement to be performed by Receiver.

9.7     Indemnification by Bank; Disclaimer. (a) Bank agrees to defend, indemnify and hold harmless Receiver, and any and all subsidiaries, parents and affiliated companies of Receiver and its officers, agents, representatives, shareholders, owners, or subcontractors retained by Receiver in connection with the matters described herein, including employees, lawyers, directors, successors and assigns, and each of them (hereinafter collectively referred to as the "Aurora Indemnitees") from any and all loss, expense, (including fees of counsel) claims, costs, causes of action, suits, damages, liabilities,

15

obligations and demands of every nature, kind and description whatsoever, in law or equity, which may result from (a) any act or failure to act by any Aurora Indemnitee during the course of its services pursuant to the terms hereof or the Order other than actions or failures to act that constitute fraud or gross negligence, and/or (b) the environmental condition of the Property including, without limitation, any violation or alleged of any state or federal law relating to the environment. This provision shall survive the termination of this Agreement.

(b) The opinions and advice given by Receiver during the course of its engagement pursuant hereto will be based on such information as is made available to Receiver, and Receiver does not assume responsibility for its accuracy or the accuracy of assumptions based thereon. The Receiver shall have discretion to exercise its powers as it deems appropriate in its business judgment. The Bank understands that any analyses and advice provided by the Receiver are inherently subjective and that reasonable businessmen reviewing the same information may reach entirely different conclusions. While Receiver will use commercially reasonable efforts and judgment in carrying out its duties hereunder, the Receiver cannot, and does not, guarantee any particular results. Accordingly, the Bank agrees to defend, indemnify and hold harmless the Aurora Indemnitees, and any and all subsidiary, parent and affiliated companies of the Aurora Indemnitees and its officers, agents, representatives, shareholders, owners, or subcontractors retained by any Aurora Indemnitee in connection with this engagement, including employees, lawyers, directors, successors and assigns, and each of them from any and all loss, expense, (including fees of counsel) claims, costs, causes of action, suits, damages, liabilities, obligations and demands of every nature, kind and description whatsoever, in law or equity, which may result from any act or failure to act by any Aurora Indemnitee during the course of its services hereunder other than actions or failures to act that constitute fraud or gross negligence. This provision shall survive the termination of this Agreement.

(c) The Bank shall defend and indemnify each of the Aurora Indemnitees and its officers, directors, stockholders, employees, and subcontractors from and against any and all claims, liabilities or damages arising as a result of Receiver's performance of its duties, including any actions by AGME or any other party that may claim a lien in the Property, hereunder except to the extent the liability or damages are attributable to the fraud or gross negligence of Receiver. The Bank shall reimburse Receiver and any other party entitled to be indemnified hereunder for all reasonable and necessary expenses (including fees of counsel) as they are incurred by Receiver or any such other indemnified party in connection with investigating, preparing for or defending any such action or claim. This provision shall survive the termination of this Agreement.

(d) Whenever pursuant to this Paragraph 9.7, the Bank is required to indemnify and defend the Aurora Indemnitees, then the Aurora Indemnitees may retain such attorneys to defend any claim(s) for which the Bank is liable to indemnify pursuant to this Agreement, and the Bank shall reimburse them for the fees and expenses incurred in connection therewith. The Bank shall, to the extent not inconsistent with any party's,

including the Receiver's, attorney-client privilege, be periodically advised by the Aurora Indemnitees of the progress of any litigation or other proceedings involving said claims.

(e) The Aurora Indemnitees shall promptly notify the Bank, in writing, of any act, event or occurrence as to which the Aurora Indemnities claim that the Bank is required to indemnify them and/or defend them pursuant to this Agreement.

(f) The Aurora Indemnitees shall be indemnified by the Bank on a monthly basis once the Aurora Indemnitees incur fees and expenses anticipated to be indemnified hereunder.

9.8    Independent Contractor. Receiver is an independent contractor and shall not be deemed an employee of the Bank.

9.9    Time of Essence. Time is of the essence in this Agreement.

9.10   Governing Law. This Agreement shall be governed by and construed in accordance with the internal, substantive laws of the State of Maine, without regard to conflicts of law principles.

9.11   Complete Agreement. This Agreement and any Schedules attached hereto and made a part hereof, supersede and take the place of any and all previous management agreements entered into between the parties hereto relating to the Property. In the event of a conflict between the terms hereof and the Order, the Order shall control.

9.12   Effective Date. This Agreement shall be deemed effective as of April____, 2011, regardless of the date upon which it is actually executed and delivered by all parties.

Any Court Order issued with respect to the receivership shall control over the terms of this Agreement.

IN WITNESS WHEREOF the parties hereto set their hands on April ____, 2011

Receiver:                           Bank:
Aurora Management Partners, Inc.    Savings Bank of Maine


By: James C. Ebbert, Director       By: Alvin S. Butler, Senior Vice President

17