| | |
|---|---|
| STATE OF MAINE<br>KENNEBEC, ss. | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO. CV-11-92 |

| | |
|---|---|
| SAVINGS BANK OF MAINE )<br>)<br>Plaintiff, )<br>)<br>)<br>)<br>)<br>)<br>v. )<br>)<br>ASSOCIATED GROCERS OF MAINE, INC. )<br>)<br>Defendant )<br>)<br>And )<br>)<br>CAMDEN NATIONAL BANK, )<br>)<br>Party in Interest. ) | **PARTIES-IN-INTEREST,<br>"AGME CUSTOMERS'"**<br><s>EMERGENCY MOTION</s><br>**TO INTERVENE<br>WITH INCORPORATED<br>MEMORANDUM OF LAW** |

NOW COME Durham Get& GO, Joseph's Market, Mary Ann's Market, Eggemoggin Country Store, Lennie's Superette, D&L Country Store, Athens Corner Store, M&H, Morrill's General Store, Belfast Variety 52, Belfast Variety, Jackson Corner Store, MEC Enterprise Thriftway, P&L Country Market, Solon Corner Market, Durkee General Store, Sherman Thriftway, DL Fotter + Sons, Dick's Market, Gowell's Store, Mike's Country Store, Hussey's General Store, Knights Yankee, Wells Food Mart, Woodland Food Mart, Southwest Food Mart, Princeton Food Mart, Buddies Groceries, Friends + Family, Pleau Enterprises, Pierce's Country Store, Paul's Food Mart, Village Market, Jimmie's Market, Sawyer's Market, Williams General Store, Wright's, Maine Street Depot, The Depot, Libby's Variety Store, Island Market, and C.H. Mathews (the "AGME Customers"), by and through their undersigned counsel, Joseph L. Goodman, Esq. and move, pursuant to M.R. Civ. P. 24(a), to intervene in this matter based upon the AGME Customers claim an interest relating to the property which is the subject of this action

and the AGME Customers are so situated that the disposition of the action may, as a practical matter, impair or impede the AGME Customer's ability to protect that interest. Further, there are no other parties who adequately represent the AGME Customers' interests in this matter. In support of this Motion, the AGME Customer state as follows:

## FACTS

1. On or about April 27, 2011, Savings Bank of Maine (hereinafter "SBM") filed a Complaint in this Court seeking to enforce and collect certain indebtedness of the Defendant, Associated Grocers of Maine, Inc. (hereinafter "AGME).

2. According to a Motion for Appointment of a Receiver, filed contemporaneously with the Complaint, AGME consented to the appointment of a receiver in the case.

3. On or about April 27, 2011 the Court entered an Order granting the appointment of James C. Ebbert of Rockland, Maine as Receiver.

4. On or about May 2, 2011, Camden National Bank (hereinafter "CNB") filed a Motion to Vacate the Order appointing the receiver.

5. On or about May 13, 2011, the Court held a hearing on CNB's Motion to Vacate. The matter was continued to a later date to allow CNB and SBM to discuss a possible resolution.

6. On or about May 20, 2011, several vendors filed an Emergency Motion to Intervene, a Motion for an Emergency Hearing, and a Motion to Amend Order Appointing Receiver.

7. The Court has set a hearing on the vendors' Motions for June 9, 2011.

8. The AGME Customers have filed a Motion for Emergency Hearing on this Motion to Intervene and their Motion to Amend Order Appointing Receiver contemporaneously

herewith, requesting that their Motions be heard at the June 9th hearing date along with the vendors' Motions.

9. The AGME Customers, upon becoming customers with AGME, were required to deposit a certain amount of money into a Capital Account.

10. The funds deposited into the Capital Accounts were to total a certain "1% factor" or roughly 1% of the cost of product each customer ordered from AGME in a given month.

11. Representatives from AGME told many AGME Customers that the "factor" was to be kept in the account at all times in case there was an issue regarding nonpayment of accounts receivable. See Defendant's Objection to Motion for Attachment and Affidavit of Lorie Chabot at ¶ 8 attached hereto and incorporated herein as **Exhibit A.**

12. Representatives from AGME told many AGME Customers that they could put more money, or an overage, into their capital account and this money would be considered savings. See **Exhibit A**, Chabot Affidavit at ¶ 9.

13. Representatives from AGME encouraged many AGME Customers to deposit an overage into their Capital Accounts because said accounts were high-interest yielding savings accounts. See **Exhibit A,** Chabot Affidavit at ¶ 15.

14. AGME's Bylaws and AGME's Annual Reports state that the customers, if they ceased to be eligible to be members of AGME any longer, could demand the balance of their Capital Accounts and AGME would deduct any outstanding accounts receivable from the Capital Account and forward the balance to the customer. See Bylaws of Associated Grocers of Maine, Inc. As Amended June 20, 2007 at Page 8 and Annual Report 2004-2005 at Section 8. <u>Capital Deposits</u> attached hereto and incorporated herein as **Exhibit B,** and **Exhibit C** respectively.

15. The AGME Customers have ceased to be eligible to be members of AGME and have made a demand upon the Receiver for the balance of their Capital Accounts.

16. The Receiver has not formally responded.

17. AGME's Annual Reports show the balance of the Capital Account as a liability. See Annual Report 2009-2010 at Page 9 attached hereto and incorporated herein as **Exhibit D.**

18. Based upon the written statements in AGME's Bylaws and Annual Reports and, more importantly, on the oral representation made by AGME agents, many AGME Customers felt that the funds deposited into their Capital Accounts was their money, set aside to secure accounts receivable and for to provide the customers with high-interest yielding savings accounts.

19. The AGME Customers in this group have an average 22 year business relationship with AGME.

20. The earliest date Savings Bank of Maine made their loan to AGME is on or about September 13, 2005.

21. At least one member of this AGME Customer group had more than $300,000.00 in its Capital Account-a whole life's savings.

22. At least one member of this AGME Customer group questioned AGME's CEO, Craig Burgess, directly about the financial health of the company and stated that she wanted to leave the company.

23. During that telephone conversation, Craig Burgess, assured the customer that AGME was financially secure and that she should not look for a new supplier.

24. This conversation took place two or three weeks before AGME shut down its operations.

25. The AGME Customers have certain claims against AGME, namely, for the balance of their Capital Accounts, and also have general unsecured claims for any remaining balance after setoff.

26. The Receiver, in a letter dated May 2, 2011, states that the customers' Capital Accounts were not kept segregated, as many customers were lead to believe, and, consequently, the money was no longer available for demand. See Letter from Receiver, dated May 2, 2011 attached hereto and incorporated herein as **Exhibit E.**

27. The Receiver, in the same letter and in his subsequent letter dated May 19, 2011, refused to allow customers to setoff their accounts receivable against what AGME was supposed to be holding in a Capital Account for just such an event. See Letter from Receiver, dated May 19, 2011 attached hereto and incorporated herein as **Exhibit F.**

28. The aggregate balance of this group of AGME Customers' Capital Accounts totals more than $1.5 million dollars.

29. The AGME Customer's right to set off or recoupment against the balances of their Capital Accounts is a right separate from security liens.

30. In a separate, but related matter, the Receiver has served one of the AGME Customers, P&L Country Market, Inc., with a Complaint for nonpayment of its accounts receivable.

31. P&L has answered said Complaint, asserted an affirmative defense of recoupment and has asserted a Counterclaim for setoff. See Defendant's Answer and Affirmative Defenses to Complaint and Counterclaim attached hereto and incorporated herein as **Exhibit G.**

32. The Receiver, as an officer of the Court, has a duty to all of AGME's creditors, not simply to Savings Bank of Maine.

33. The AGME Customers are a significant creditor of AGME and the Receiver has a duty to protect their interest as well as the interests of the other AGME creditors.

## APPLICABLE LAW

34. Rule 24(a) of the Maine Rules of Civil Procedure states:

> **Intervention of Right.** Upon timely application, anyone shall be permitted to intervene in an action: (1) when a stature confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

## ARGUMENT

**A. The AGME Customers Claim an Interest in Property at Issue in this Action**

35. The Receiver has claimed that the accounts receivable are not subject to the common law rights of setoff or recoupment in his generic letter dated May 2, 2011.

36. The AGME Customers were required to deposit funds into their Capital Accounts with the express contemplation of setoff.

37. The AGME Customers were told by representatives of AGME that the funds in their Capital Accounts were set aside to setoff against unpaid accounts receivable.

38. The AGME Customers were encouraged to and many did deposit more funds than required into their Capital Accounts to be used as a high-interest yielding savings account.

39. The AGME Customers were lead to believe that the money deposited into Capital Accounts would be available to them on demand if they wanted to withdraw any amounts over their "1% factor" or they ceased to be eligible for membership with AGME.

40. Representatives from AGME knowingly made false statements regarding the financial health of AGME to induce the AGME Customers to stay with AGME rather than find another supplier and, thus, demanding the balance of their Capital Accounts (which no longer existed).

41. The AGME Customers have a right to setoff or recoupment against the balances in their Capital Accounts.

42. The right to setoff and recoupment is a right aside from Savings Bank of Maine's security lien. "Lenders having a security interest in accounts receivable could only take an interest in contract rights or receivables subject to a trade creditor's right to set off. See *U.S. Aeroteam Inc. v. Delphi Automotive Systems LLC (In re U.S. Aeroteam Inc.)*, 327 B.R. 852, 861 (Bankr. S.D. Ohio 2005) (*citing Citizens Bank of Maryland v. Stumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995)).

43. Since AGME's Bylaws and Annual Reports contemplate setoff against the Capital Accounts and the AGME Customers were explicitly told by representatives of AGME that the 1% factor in the Capital Accounts was explicitly for that purpose, there was a contractual right for AGME Customers to setoff.

44. Maine law also allows for recoupment and the Law Court has stated, "[A] 'recoupment' is a reduction of part of the plaintiff's damages because of a right in the defendant arising out of the same transaction." *Inniss v. Methot Buick-Opel, Inc.*, 506 A.2d 212, 217 (Me. 1986).

45. If a creditor has a State Court right of recoupment or setoff, said right will exist regardless of the secured liens of lenders, vastly devaluing the collateral (in this matter, accounts receivable). See Deborah L. Thorne, *Lenders Beware: Setoff and Recoupment*

*Can Reduce Your Collateral Value*, 24 ABI J. No. 10, (2005) *(citing In re U.S. Aeroteam Inc.).* See ABI J. Article attached hereto and incorporated herein as **Exhibit H**.

46. The AGME Customers claim an interest in the balance of the Capital Accounts which where represented to the Customers as segregated and "safe" accounts.

B. **The AGME Customers are So Situated that the Disposition of the Action May, as a Practical Matter, Impair or Impede the AGME Customers' Ability to Protect their Interests in the Capital Accounts.**

47. The Receiver intends to collect the accounts receivable, by filing suit, if necessary, against each AGME Customer with outstanding balances.

48. The Receiver has refused to acknowledge the AGME Customers' rights to set off or recoupment or their demands for the balances of their Capital Accounts.

49. The Receiver claims that the AGME Customers cannot setoff against their Capital Accounts because, "Unfortunately the open invoices and CAs have different legal standings." Savings Bank of Maine claims that the right to setoff would not prevail against their security interest in the accounts receivable. The AGME Customers claim that their right to setoff or recoupment against the balances in their Capital Accounts is a right aside from any security interests. This Court has not had an opportunity to determine whether the AGME Customers in fact have a right to setoff or recoupment or whether such a right, if it were found to exist in this case, could be exercised despite Savings Bank of Maine's liens on the accounts receivable. At any rate, the AGME Customers are entitled to be heard on the matter and ensure that their rights are not prejudiced by the conduct of the Receiver. Further, the AGME Customers should have there right to request that the Court instruct the Receiver, in any manner the Court deems proper, to uphold his duty to all creditors, not just Savings Bank of Maine.

50. The AGME Customers have chosen to file this Motion to Intervene in this matter rather than filing suit against the Receiver because the Customers believe this method is more cost effective and preserves judicial economy. However, the AGME Customers reserve their right to seek the Court's permission to file a suit against the Receiver. The AGME Customers simply wish to preserve their rights by requesting that this Court modify its Order Appointing the Receiver and request that they received notice and be given the opportunity to be heard regarding issues that may affect their property rights while AGME is liquidated by the Receiver.

**C. The AGME Customers' Interests are not Adequately Represented by Any Other Party.**

51. The Receiver is an officer of the Court and, as such, does not represent any one party. *Glidden v. Rines,* 128 A. 4, 6 (Me. 1925)("[The receiver] is the servant of the Court."). "[A] receiver is…appointed by the court to receive and preserve property or funds, and is a ministerial officer of the court, or, as he is sometimes called, the hand or arm of the court. He represents the court, acts under its direction, and his possession of the property or funds in litigation is the possession of the court. His authorities derived solely from the act of the court appointing him, and he is subject to its order only." *Glidden* at 6.

52. Savings Bank of Maine and Camden National Bank have conflicting interests to the interests of the AGME Customers. Savings Bank of Maine has claimed a security interest in AGME's accounts receivable. Savings Bank of Maine has, informally, stated that their security interest trumps any claims that the AGME Customers may have to setoff.

53. AGME has not contested the action Savings Bank of Maine has instituted against it and it does not represent the interests of the AGME Customers.

54. No other party represents the AGME Customers' interests in this action.

## CONCLUSION

55. The AGME Customers satisfy all of the requirements for nonparty intervention by right in this matter as set forth in M.R. Civ. P. 24(a). The AGME Customers claim that they have an interest in the property at issue in this matter, namely, the Capital Accounts, and also have general unsecured claims for any remaining balance after setoff. Additionally, the Receiver's refusal to address the AGME Customers' demand for more than $1.5 million from their Capital Accounts and his efforts to collect outstanding accounts receivable at the same time impairs or impedes the AGME Customers' interests in their Capital Accounts. Finally, the AGME Customers cannot rely on the Receiver, or any other party, to protect their interests in this action.

WHEREFORE, the AGME Customers pray that this Court grant their Motion to Intervene, permit the filing of the attached Answer, and for such other and further relief as this Court deems fair and equitable.

Dated at Portland, this 7th day of June, 2011.

_____
Joseph L. Goodman, Esquire Bar # 7472
The Goodman Law Firm, P.A.
537 Congress Street
P.O. Box 7523
Portland, Maine 04112
(207) 775-4335
Attorney for the AGME Customers