## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In re: ) | |
| ) | |
| ASSOCIATED GROCERS OF MAINE, INC., ) | Chapter 11 |
| ) | Case No. 11-11196 LHK |
| Debtor. ) | |

### RESPONSE OF JAMES C. EBBERT, STATE COURT-APPOINTED RECEIVER, TO ORDER TO SHOW CAUSE DATED SEPTEMBER 1, 2011

NOW COMES James C. Ebbert, the receiver (the "Receiver") appointed by the Kennebec County Superior Court of the State of Maine (the "State Court") in the pending civil action captioned *Savings Bank of Maine v. Associated Grocers of Maine, Inc., et al.*, Civil Action Docket No. CV-11-92 (the "State Court Action"), by and through his undersigned counsel, and hereby responds to the Order to Show Cause dated September 1, 2011, issued by this Court, as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

1.  Founded in 1953, Associated Grocers of Maine, Inc. ("Debtor") is a corporation organized and existing under the laws of the State of Maine, with a former place of business in the Town of Gardiner, County of Kennebec, and State of Maine. Debtor formerly distributed and delivered meat, seafood, produce, bakery, deli, grocery, frozen, dairy, private label, and other and related products and items, including perishable items, and also provided certain related services to hundreds of its independent member retailers in Northern New England.

2.  On or about April 27, 2011, The Bank of Maine, f/k/a Savings Bank of Maine ("BOM"), filed a certain Complaint dated April 27, 2011 (the "Complaint"),[1] a true copy of which is attached hereto as Exhibit A, naming Debtor as Defendant and Camden National Bank ("CNB") as Party-in-

---

[1] The Complaint contains the following counts: Count I (Action on the Note); Count II (Unjust Enrichment (Pleading in the alternative)); and Count III (Appointment of Receiver). Subsequently, BOM filed a certain First Amended Complaint dated May 3, 2011, to correct certain inadvertent errors in the Complaint. In all other respects, the First Amended Complaint is identical to the Complaint.

Interest in the State Court, thereby commencing the State Court Action. At the same time, BOM also filed its <u>Consented-to</u> Motion for Emergency Appointment of Receiver for Commercial Business dated April 27, 2011, a true copy of which is attached hereto as Exhibit B, and the Affidavit of Alvin W. Butler in Support of Motion for Appointment of Receiver dated April 27, 2011, a true copy of which is attached hereto as Exhibit C.

3. On April 27, 2011, the State Court issued that certain Consented-to Order Appointing Receiver dated April 27, 2011 (the "Original Receiver Order"), in the State Court Action, a true copy of which Original Receiver Order is attached as Exhibit A to the August 26, 2011 Statement Regarding Receiver's Authority to Sign and File Voluntary Petition that the Receiver filed in this case. The Original Receiver Order was issued with the consent of Debtor and BOM.

4. The Original Receiver Order authorizes the Receiver, among other things, "[t]o manage, protect and preserve the Collateral (meaning all the property securing the Note) and, to the extent feasible, to wind up the business of Defendant, AGME . . . and to conduct an orderly shutdown of business operations . . . [and] [t]o do anything the Receiver reasonably deems necessary to perform the duties set forth above." Original Receiver Order, ¶¶ 1(a) and 1(r).

5. Subsequent to the issuance of the Original Receiver Order, all directors of Debtor voluntarily resigned.

6. After a hearing held before the State Court on June 9, 2011, the State Court issued that certain Amended and Restated Order Appointing Receiver dated June 15, 2011 (the "Amended Receiver Order"), a true copy of which Amended Receiver Order is attached as Exhibit B to the August 26, 2011 Statement Regarding Receiver's Authority to Sign and File Voluntary Petition that the Receiver filed in this case. The Amended Receiver Order was issued with the consent of Debtor, BOM, CNB, Sure Winner Foods, Inc., Oakhurst Dairy, Lepage Bakeries, Inc., Michaud Distributors, and Imperial

Distributors, Inc.[2]

7. The Amended Receiver Order authorizes the Receiver, among other things, "[t]o manage, protect and preserve the Collateral (meaning all the property securing the Note) and, to the extent feasible, to wind up the business of AGME . . . and to conduct an orderly shutdown, wind up, and/or liquidation of the business and assets of AGME until completed; . . . [to] do all things AGME could or would do in the course of shutting down, winding up, and/or liquidating the business and assets of AGME; . . . [and] [t]o do anything the Receiver reasonably deems necessary to perform the duties set forth above." Amended Receiver Order, ¶¶ 1(a) and 1(s).

8. On August 26, 2011 (the "Petition Date"), the Receiver filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") on behalf of Debtor.

9. As of the Petition Date, Debtor had no officers or directors.

## LEGAL ARGUMENT

I. The Receiver has the Authority to Sign a Bankruptcy Petition on Behalf of Debtor.

10. As this Court indicated at the hearing held on September 1, 2011, the analysis of the issue of the Receiver's authority to sign a bankruptcy petition on behalf of Debtor must begin with § 301(a) of the Code, which states: "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." Section 109(b) of the Code, with exceptions inapplicable here, provides that "[a] person may be a debtor under chapter 7 of this title . . . ." Section 109(d) of the Code provides that "a person that may be a debtor under chapter 7 of this title . . . may be a debtor under chapter 11 of this title." Section 101(41) of the Code states that "[t]he term 'person' includes individual, partnership, and corporation . . . ." Accordingly, a corporation, such as Debtor here, may be a debtor under Chapter 11 of the Code.

---

[2] The so-called "AGME Customers," referenced in Exhibit A to the Amended Receiver Order consented to the issuance of the Amended Receiver Order premised on the inclusion of their counsel on Exhibit A to the same.

11. It is well-recognized within the First Circuit (and elsewhere) that a corporation subject to a state court receivership order, as Debtor is here, may still file a bankruptcy petition under the Code. *See, e.g.*, *In re S & S Liquor Mart Inc.*, 52 B.R. 226, 227 (Bankr. D.R.I. 1985) ("it is fundamental that a state court receivership proceeding may not operate to deny a corporate debtor access to the federal bankruptcy courts") (citations omitted); *see also In re Newport Offshore,* 219 B.R. 341, 355 (Bankr. D.R.I. 1998) ("In this case, or in any other where federal bankruptcy relief may be available, the appropriate parties may seek an order for relief through voluntary or involuntary petition.") (Haines, J.).

12. Turning to the question of who may file a bankruptcy petition on behalf of a corporation, it is black letter law that "the initiation of [bankruptcy] proceedings, like the run of corporate activities, is left to the corporation itself, i.e. to those who have the power of management." *Price v. Gurney*, 324 U.S. 100, 104 (1945); *see also In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 157 (Bankr. D. Me. 1982) ("The authority to file a bankruptcy petition depends upon the governing instruments of the corporation and on state law.") (citation omitted).[3] Accordingly, in this case, the Court must determine whether the Receiver had the necessary authority under Maine state law to file a bankruptcy petition on behalf of Debtor.

13. In examining the admittedly sparse Maine case law on the subject, the Receiver notes that the Maine Law Court has held that, "[b]y the great weight of authority, 'The appointment of a receiver for a corporation is a suspension of its functions and authority over its property and effects.' 'The appointment of a receiver does not, however, work a dissolution of the corporation.' 'This doctrine applies to the appointment of a permanent receiver.'" *Cooper v. Casco Mercantile Trust Co.*, 134 Me.

---

[3] Here, Article IV.A – MANAGAMENT AND OFFICERS of Debtor's ByLaws provided, in pertinent part, that "[t]he complete management of the affairs of the Corporation shall be vested with a Board of Directors, consisting of the CEO of the Corporation, who shall serve ex officio only for the term of his or her presidency, and up to thirteen (13) directors." *See* Retailer handbook at 3 (a true copy of which is attached hereto as Exhibit D). Given that Debtor had no Board of Directors on the Petition Date, the Board of Directors could not file a bankruptcy petition on behalf of Debtor.

372, 381 (Me. 1936) (citation omitted).  Although both the Original Receiver Order and the Amended Receiver Order refer to the Receiver as a receiver "pendente lite," which means "in litigation" or "during the pendency of the action," *see, e.g., Terra Bentley II, LLC v. Vill. of Overland Pointe, LLC (In re Terra Bentley II, LLC)*, 2011 Bankr. LEXIS 1341 (Bankr. D. Kan. Apr. 6, 2011); *Panza v. Panza (In re Panza)*, 2006 Bankr. LEXIS 1337 (Bankr. W.D. Pa. July 17, 2006), a court generally appoints such a receiver "to maintain the status quo." *United States v. Auditorium Conditioning Corp.*, 52 F. Supp. 528, 530 (D.N.Y. 1943); *see also In re Elfast*, 30 F. Supp. 819, 821 (D.N.Y. 1939) ("Compare the powers of the foreclosure receiver [pendente lite] with those contained in the Martin Act Receivership order and it becomes obvious that they are entirely different.  The former is highly limited, whereas the latter is broad and general.").  Here, of course, both State Court Orders provide the Receiver with broad authority well beyond the bounds of preserving the status quo.  In particular, and as noted above, the Amended Receiver Order authorizes the Receiver, in relevant part, "to conduct an orderly shutdown, wind up, and/or liquidation of the business and assets of AGME *until completed* . . . ."  Amended Receiver Order, ¶ 1(a) (emphasis added).  Once the Receiver embarked on such a course, which he did almost immediately upon appointment, he effectively became a permanent receiver of Debtor until he completed the liquidation process.  Moreover, the State Court Action, which is the action or litigation in which the Receiver was appointed, remains pending.  Accordingly, this Court should find that the Law Court principles quoted above apply with equal force to this case, that the terms of the appointment orders trump any label placed on the Receiver, and that, in any event, even as a receiver pendent lite, the Receiver is expressly empowered to take the action necessary to liquidate the business and assets of Debtor.

14.     Hand in glove with this principle is the fact that courts widely acknowledge that the terms of the court order appointing a corporate receiver define the scope of the receiver's authority.  *See, e.g.,*

*Ritchie Special Credit Invs., Ltd. v. United States Tr.*, 620 F.3d 847, 850 (8th Cir. 2010) ("The scope of the receivership and [the receiver]'s duties and authority are set forth in the district court's order.") (citation omitted); *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 627 (6th Cir. 2003); *SEC v. Elfindepan, S.A.*, 169 F. Supp. 2d 420, 424 (M.D.N.C. 2001) ("Because the receiver is under the direct control of the court, which defines the receiver's powers and places limitations upon her, the scope and nature of a particular receivership will depend on the language of the order appointing the receiver."); *see also* T. Eisenberg, 3B-36 Debtor-Creditor Law § 36.05 (2011) ("However, in general, state receivership law is very unlike federal bankruptcy law in that very little detail is given in the enabling statutes as to what a receiver can and cannot do. Thus, it will be the court's order appointing the receiver and delineating the receiver's duties that will be the main guide to the receiver's powers.") (footnotes omitted). Beyond the express terms of the appointment order itself, however, "[t]he powers of a receiver of a corporation include . . . those reasonably or necessarily implied from the order of appointment." *Virgin Islands v. Lansdale*, 2004 U.S. Dist. LEXIS 16814, at *12-13 (D.V.I. Aug. 23, 2004) (quoting 16 Fletcher Cyclopedia Of The Law Of Private Corporations § 7813); *see also Aaron v. Rosepink (In re Global Grounds Greenery, LLC)*, 405 B.R. 659, 665-66 (Bankr. D. Ariz. 2009) ("Clark's treatise states that receivers' powers derive from five possible sources: 'First: Those powers and duties directly stated in the order of court appointing the receiver and such subsequent powers and duties as may from time to time be given. Second: Those powers and duties clearly implied from the order or orders of court appointing the receiver and which are clearly and reasonably necessary to the carrying out of such order or orders. . . .'") (quoting 2 Ralph Ewing Clark, A Treatise on the Law and Practice of Receivers § 355 at 610-11 (3d ed. 1959)). Moreover, in cases when corporate management resigns prior to a bankruptcy filing on behalf of the corporation a court appointed receiver serves as the *de facto* debtor-in-possession. *See Ritchie Special Credit Invs., Ltd.*, 620 F.3d at 851.

15. In this case, as indicated above, the Amended Receiver Order authorizes the Receiver, among other things, "[t]o manage, protect and preserve the Collateral (meaning all the property securing the Note) and, to the extent feasible, to wind up the business of AGME . . . and to conduct an orderly shutdown, wind up, and/or liquidation of the business and assets of AGME until completed; . . . [to] do all things AGME could or would do in the course of shutting down, winding up, and/or liquidating the business and assets of AGME; . . . [and] [t]o do anything the Receiver reasonably deems necessary to perform the duties set forth above." Amended Receiver Order, ¶¶ 1(a) and 1(s).

16. The terms of the Amended Receiver Order parallel the terms of the receiver order that the bankruptcy court examined in *In re Statepark Bldg. Group, Ltd.*, 316 B.R. 466, 471 (Bankr. N.D. Tex. 2004) ("In each of the receivership orders here, Ross was 'empowered to do any and all acts necessary to the proper and lawful conduct of the receivership' including, *inter alia*, the power 'to take charge and keep exclusive possession free from the interference by any other person or entity of all assets and property of [the particular Debtor],' 'to act as liquidator,' and 'to liquidate all assets, including real property.' The receivership orders further provided that 'the Receiver is authorized to . . . incur the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses . . . .' The receivership orders do not prohibit the Receiver from filing bankruptcy petitions on behalf of the Debtors. It appears that under Texas law and the orders appointing the Receiver over these particular debtors that the Receiver had the authority to act on behalf of the Debtors in filing the bankruptcy petitions."). Pursuant to the Amended Receiver Order, the Receiver had similarly broad powers with respect to Debtor and the Amended Receiver Order did not prohibit the Receiver from filing a bankruptcy petition on behalf of Debtor.

17. In filing the Voluntary Petition in this case, the Receiver was simply acting in accordance with the express and/or implied authority that the State Court provided to him pursuant to the terms of

the Amended Receiver Order, and the Receiver's act in doing so was equivalent to a duly-authorized officer of Debtor filing a bankruptcy petition for Debtor pursuant to a duly-adopted resolution of Debtor's Board of Directors. Nothing in § 301 of the Code mandates that this Court treat the Receiver's filing of the Voluntary Petition differently than if a duly-authorized officer of Debtor filed it. Here, the Receiver, acting under the express and/or implied authority of the Amended Receiver Order, made a reasonable business decision that filing a voluntary Chapter 11 bankruptcy petition was in the best interest of creditors and Debtor.

18. Other courts have also acknowledged that a state court-appointed receiver that has authority to manage a corporation or other entity may file a bankruptcy petition on behalf of that entity. *See, e.g., In re Gen-Air Plumbing & Remodeling*, 208 B.R. 426, 431 (Bankr. N.D. Ill. 1997) ("Pursuant to Illinois law, cited in *Dearborn Process, supra* and the furnished corporate charter and by-laws of Gen-Air, either a resolution passed at a proper board meeting by the majority of directors present could place the corporation into bankruptcy or by action to that effect by the [state court-appointed] Receiver."); *In re Monterey Equities-Hillside*, 73 B.R. 749, 752 (Bankr. N.D. Cal. 1987) ("A bankruptcy petition for a partnership or other artificial entity may be filed by those who, under state law, have the authority to manage the entity." . . . "Since the state court authorized the receiver to manage the partnership, he also has the authority to commence a bankruptcy case.") (citations omitted). Accordingly, this Court should find that the Receiver had the authority to file the Voluntary Petition on behalf of Debtor.

II. Abstention is not Warranted Pursuant to 11 U.S.C. § 305(a).

19. Although labeled "abstention," § 305(a)(1) of the Code provides that "[t]he court, after notice and a hearing, may *dismiss* a case under this title, or may *suspend* all proceedings in a case under this title, at any time if -- (1) the interests of *creditors and the debtor* would be better served by such

*dismissal* or *suspension*." 11 U.S.C. § 305(a)(1) (emphasis added).[4]

> The test for dismissal or suspension pursuant to § 305(a)(1) is whether the relief would be in the "best interests" of both the debtor and its creditors. *See* 11 U.S.C. § 305(a)(1). The case law concerning suspension of a bankruptcy case pursuant to § 305(a)(1) is sparse, but there is no dispute that suspension is "an extraordinary remedy that should be used sparingly and not as a substitute for a motion to dismiss under other sections of the Bankruptcy Code." L. King, et al., Collier on Bankruptcy at ¶ 305.02. The test for suspension (as well as dismissal) is whether both the debtor and the creditors would be "better served" by such action. *Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 625 (9th Cir. BAP 1995).

*In re Schur Mgmt. Co., Ltd.*, 323 B.R. 123, 129 (Bankr. S.D.N.Y. 2005);[5] *see also In re Fortran Printing, Inc.*, 297 B.R. 89, 94 (Bankr. N.D. Ohio 2003) ("The decision to dismiss or suspend under 305(a) is discretionary and must be made on a case-by-case basis.") (citation omitted). "As the statutory language and legislative history demonstrate, the test under section 305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor. Nor is the test whether a balancing process favors dismissal. Rather, the test is whether *both* the debtor *and* the creditors would be 'better served' by a dismissal." *In re Eastman*, 188 B.R. at 625 (emphasis added); *accord Pennino v. Evergreen Presbyterian Ministries ( In re Pennino)*,, 299 B.R. 536, 538 (8th Cir. B.A.P. 2003); *see also* 2 Collier on Bankruptcy ¶ 305.02[1] (15th ed. rev. 2011) ("Because of this requirement, few fact patterns fall within section 305(a).") (footnote omitted).

20. Therefore, in determining whether dismissal under § 305(a) is appropriate, "courts

---

[4] The burden of proof under § 305(a) falls on the party seeking such suspension or dismissal. *See, e.g., In re Sherwood Enterprises, Inc.*, 112 B.R. 165, 167 (Bankr. S.D. Tex. 1989); *see also In re Condominium Ass'n. of Plaza Towers South, Inc.*, 43 B.R. 18, 20 (Bankr. S.D. Fla. 1984) ("Moreover, given the non-appealability of dismissal under § 305 of the Bankruptcy Code, this Court finds that [the moving party] carries a substantial burden in advocating abstention in this case and that it has not met that burden and therefore, this Court denies the Motion again, this time with prejudice.").

[5] "A motion under section 305(a) to 'dismiss a petition or suspend the bankruptcy case is a form of extraordinary relief,' *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 524 (Bankr. S.D.N.Y. 1996) ("RCM") (Brozman, C.J.); *In re Paper I Partners, L.P.*, 283 B.R. 661, 678 (Bankr. S.D.N.Y. 2002) (Gerber, J.) (citing RCM), and abstention under section 305(a) is a power that should only be utilized under extraordinary circumstances. *Id.*, 283 B.R. at 678. *See also In re Grigoli*, 151 B.R. 314, 319 (Bankr. E.D.N.Y. 1993) (Duberstein, C.J.) (denying a request for abstention by two creditors holding 55% of the estate's claims where the interests of the debtor and the creditors were best served through involuntary Chapter 7 case, and noting earlier authority that Congress had indicated that it intended section 305(a) dismissals to be the exception rather than the rule)." *In re Century/ML Cable Venture*, 294 B.R. 9, 37 (Bankr. S.D.N.Y. 2003).

have looked to the facts of the individual cases" while considering a number of criteria. *In re Artists' Outlet, Inc.*, 25 Bankr. 231, 233 (Bankr. D. Mass. 1982). Such factors generally include: (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Fax Station, Inc.*, 118 B.R. 176, 177 (Bankr. D.R.I. 1990) (citations omitted); *see also In re Birchall*, 381 B.R. 13, 18 (Bankr. D. Mass. 2008).

21. Turning to an analysis of the above factors, (1) economy and efficiency of administration both favor this Court since all parties in interest have been notified of the bankruptcy filing and will have the opportunity to participate in this case; (2) while there is already a pending proceeding in a state court, namely, the State Court Action, that proceeding is not nearly as well-equipped as this Court in terms of resources and expertise and, given the lack of any statutory framework for this type of receivership and the paucity of guiding decisions under Maine law, that proceeding lacks the structure and guidance that the Code, the Federal Rules of Bankruptcy Procedure, this Court's Local Bankruptcy Rules, and the substantial body of case law interpreting the same can provide; (3) for these and other reasons noted above, federal proceedings are more likely to reach a just and equitable solution faster and with less costs to all interested parties than the State Court proceedings; (4) there is no readily-available alternative means of achieving the equitable distribution of assets within the same timeframe as in bankruptcy; (5) the Receiver and creditors have, thus far, been unable to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) the receivership has not proceeded so far that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought is to provide for a significantly more

economical and efficient administration of the assets and claims in this case and to draw upon the resources and specialized expertise of this Court in resolving the numerous pending issues involved.

22. Here, no party in interest has demonstrated that both creditors and Debtor would be better served by abstention. To the contrary, the continued administration of this case under Chapter 11 of the Code is in the best interest of all creditors and Debtor. Abstention is a significantly inferior alternative to the administration of the estate in this Court. Moreover, this is not the prototypical abstention fact pattern where a few disgruntled creditors file an involuntary case in an attempt to gain leverage in the face of an out-of-court workout to which most creditors agree. *See* 2 Collier on Bankruptcy ¶ 305.02[2][a] (15th ed. rev. 2011). Absent administration of this case in this Court, any potential preference claims and other avoidance actions under §§ 547 and 548 of the Code will be lost. *See* Debtor's Statement of Financial Affairs ¶ 3(b). Allowing a trustee to administer this case will ensure an orderly, fair liquidation of Debtor's assets and claims. Finally, this case is manifestly not a mere two-party dispute, which could militate in favor of abstention. *See* 2 Collier on Bankruptcy ¶ 305.02[2][d] (15th ed. rev. 2011). Here, there are numerous creditors of Debtor holding claims of varying types, and the bankruptcy process would allow for a more efficient and economical resolution of those claims.

23. Accordingly, this Court should decline to exercise its discretion to abstain under § 305(a) of the Code.

## CONCLUSION

24. For all these reasons, the Receiver requests that the Court (a) find and rule that the Receiver has the authority to sign a bankruptcy petition on behalf of Debtor, (b) determine and hold that neither abstention, dismissal nor suspension is warranted with respect to this bankruptcy case pursuant to 11 U.S.C. § 305(a), and (c) grant such other and further relief as the Court deems just, appropriate, and equitable under the circumstances.

Dated at Portland, Maine this 8th day of September, 2011.

                    /s/ Fred W. Bopp III
                    Fred W. Bopp III, Esq.
                    Randy J. Creswell, Esq.
                    Anthony J. Manhart, Esq.
                    Shawn K. Leyden, Esq.
                    Counsel for James C. Ebbert,
                    State Court-Appointed Receiver

Perkins Thompson, P.A.
One Canal Plaza, PO Box 426
Portland, ME  04112-0426
(207) 774-2635
fbopp@perkinsthompson.com

## **CERTIFICATE OF SERVICE FOR ELECTRONIC FILING**

      I hereby certify that I caused to be served true and correct copies of the above Response and this Certificate of Service on each of the parties set forth on the Service List below, via First Class U.S. mail, postage fully prepaid, on this date.  All other parties listed on the Notice of Electronic Filing have been served electronically on this date.

      Dated at Portland, Maine this 8th day of September, 2011.

                    /s/ Shawn K. Leyden
                    Shawn K. Leyden, Esq.
                    Counsel for James C. Ebbert,
                    State Court-Appointed Receiver

Perkins Thompson, P.A.
One Canal Plaza, PO Box 426
Portland, ME  04112-0426
(207) 774-2635
sleyden@perkinsthompson.com

### **Service List**

James C. Ebbert [via email only]
Court-Appointed Receiver
PO Box 1389
Camden, ME  04843